628 P.2d 968

**Theodore A. OFSTEDAHL and Patricia L. Ofstedahl, husband and wife, Plaintiffs-Appellants,**

v.

**CITY OF PHOENIX, a municipal corporation, et al., Defendants-Appellees.**

**No. 1 CA–CIV 4798.**

Court of Appeals of Arizona,
Division 1,
Department A.

April 14, 1981.
Rehearing Denied May 13, 1981.
Review Denied June 2, 1981.

Renaud, Cook & Videan, P. A. by J. Gordon Cook, Phoenix, for plaintiffs-appellants.

Jones, Teilborg, Sanders, Haga & Parks by W. R. Jones, Jr., Edward G. Hochuli, Phoenix, for defendants-appellees.

## OPINION

OGG, Judge.

In this appeal we must determine if the trial court erred in directing a verdict for the defendant at the close of plaintiffs' evidence in an automobile personal injury negligence case.

The appellants-plaintiffs, Theodore A. Ofstedahl and Patricia L. Ofstedahl, husband and wife, filed this action against the appellee-defendant, City of Phoenix, alleging that the city was negligent in failing to post proper warnings at a city road construction site. The city admits that there may have been insufficient warnings as required by traffic safety manuals, but contends there was not showing that such negligence was the proximate cause of plaintiff Patricia Ofstedahl's injuries.

The Ofstedahls raise two issues in this appeal:

1. Did the trial court err in granting the city's motion for a directed verdict?

2. Did the trial court err in striking a portion of the testimony of Robert Roller, the plaintiffs' accident reconstruction expert, as such testimony relates to inferences and speculation as to other vehicles in the area of the accident?

To analyze these issues, we turn to an examination of the evidence presented by the plaintiffs. In such an examination, we are mindful that a defendant's motion for a directed verdict at the close of a plaintiff's case admits the truth of all competent evidence, together with all reasonable inferences to be drawn therefrom. The most often cited Arizona case on this point is *Figueroa v. Majors*, 85 Ariz. 345, 338 P.2d 803 (1959), which states the rule of law as follows:

It is well settled in this jurisdiction that a motion for a directed verdict for the defendant admits the truth of whatever competent evidence the opposing party has introduced, including all inferences that reasonably can be drawn therefrom, and requires that the evidence be interpreted most strongly against the moving party and in the light most favorable to the opposing party. (citations omitted). It is further fundamental that a verdict will not be directed where the evidence on material facts is conflicting, or where on undisputed facts reasonable and fairminded men may differ as to the inferences and conclusions to be drawn, or where different conclusions might reasonably be reached by different minds, and thus the question of negligence and proximate cause is one of fact to be submitted to the jury and not a question of law for the court; if, upon all the facts and circumstances, there is a reasonable chance or likelihood of the conclusions of reasonable men differing, then the question is one for the jury. (citations omitted)

*Id.* at 346, 338 P.2d at 804. *Accord, Reader v. General Motors Corp.,* 107 Ariz. 149, 483 P.2d 1388 (1971).

We will now review the evidence in the light of the above legal principles. The plaintiff, Patricia Ofstedahl, suffered severe personal injuries when her vehicle, traveling east on East McDowell Road in Phoenix, Arizona, swerved sharply into the westbound lane of travel and collided with an oncoming vehicle. The plaintiff was traveling in the inside lefthand lane at a speed estimated to be at 50 to 53 miles per hour. The posted speed limit for the area was 50 miles per hour. The shock of the accident caused plaintiff to be amnesic, and she has no memory of what occurred in the pertinent periods of time leading up to the accident or any details of the accident itself.

At the time of the accident, the city was performing road construction work at a point east of the accident scene and the city had closed the righthand curb lane for eastbound traffic by placing red warning cones at the construction site. Conflicting evidence indicates the coning at the approach to the lane closure at the construction site was either 16 or 80 feet. The only warning sign in the area was a tripod with three red flags with a sign advising motorists to "Keep Left". This sign was located within the taper of the cones at the start of the taper and near the closed righthand lane. The accident occurred immediately adjacent to the start of the cones blocking off the righthand lane at the city construction site.

The Manual on Uniform Traffic Control Devices that was adopted by the Phoenix Traffic Barricade Manual provides that the function of coning and channeling devices is to warn and alert drivers to any hazards created by construction or maintenance work and to safely guide motorists past such hazards. Such safety manuals provide there should be two advance warnings prior to the coning devices. The first sign should be 1500 feet from the coning calling attention to the impending lane change with a second warning 500 feet to 1000 feet displaying a graphic pictorial illustration of the lane change. The Manual on Uniform Traffic Devices states that the taper for the coning devices should have extended for a distance of 500 feet to allow a motorist driving at the 50 mile per hour speed limit to adjust his speed and prepare for the lane change. The manual states that "An inadequate taper will most always produce undesirable traffic operations with resulting congestion and possibly accident through the area." Such manuals, after admission into evidence, can be considered by the jury on the issue of the city's negligence. *See Chavez v. Pima County,* 107 Ariz. 358, 488 P.2d 978 (1971); *State v. Watson,* 7 Ariz.App. 81, 436 P.2d 175 (1967). It is therefore clear and such issue is not disputed for the purposes of this appeal that the city was negligent and violated the guidelines of the safety manuals in failing to place warning signs and properly tapered coning devices at the construction site lane change.

The only eyewitness who testified relative to the events leading up to the accident

was Robert S. Bartlett. He was traveling east on East McDowell Road in the same traffic flow with the plaintiff. At the traffic light on McDowell and 52nd Street, he was stopped in the flow of traffic with five or six vehicles, including the plaintiff's. The vehicles were in the two eastbound lanes and as they left the light, he noticed the plaintiff pull ahead of him in the left-hand lane. As he topped the ridge at the Papago Buttes, approximately a quarter of a mile from the scene of the accident, he heard a squeal of tires and saw the two cars involved in the accident go out into the desert. He noticed there was a brown station wagon ahead of him in the outside lane in the vicinity of the accident but could not say exactly where such vehicle was in relation to the plaintiff's vehicle. He could not say how many other cars were in the accident area or where any other cars were located.

The plaintiff's accident reconstruction expert, Robert Roller, testified extensively on the negligence of the city in not properly warning the public of the lane change and the dangers of such a traffic condition. The expert was allowed to testify, over the objection of defendant's counsel, that the accident was directly related to the failure of the city to have proper warnings and taper to the warning cones at the construction site. The portion of the testimony relating to the cause of the accident that best illustrates this testimony and the basis for the objection is set out as follows:

MR. ROLLER: [I]n my opinion the movement of the Ofstedahl vehicle initially, the brake application was from something in front of her because her lane was open. She was in that lane. . . . The skid marks clearly show she was already in that lane, so, that would have been something from in front of her, other traffic, the movement, whatever it was went away because that hazard was eliminated because she then released her brakes and turned her vehicle to the left. That type of evasive action is generally from a stimulus from the side and not from the front. So, it would be my opinion

that a vehicle was in front alongside Mrs. Ofstedahl at that time and was crowding and then in response to that she put left steering input into the car and lost control of it.

At the close of the plaintiff's case, the court granted the defendant's motion to strike that portion of Roller's testimony insofar as it related to inferences and speculations concerning what caused plaintiff to brake and then to suddenly veer left into the lane of oncoming traffic. The defendant argued that such statements were based upon conjecture and surmise and were unreasonable inferences not based upon the physical facts. Defendant further contended such testimony was not based upon a proper foundation for expertise in this area. Roller was an accident reconstruction expert and not a traffic engineer or a "human factors" expert.

■ The plaintiffs alleged the trial court erred in striking such testimony because it is authorized under rule 702, Arizona Rules of Evidence, which permits expert testimony "if it will assist the trier of fact to understand the evidence or to determine a fact in issue. . . ." Rule 704, Arizona Rules of Evidence, modifies Arizona's prior case law and allows qualified experts to testify on the ultimate issues of fact.

Although the recently adopted rules of evidence have liberalized the use of expert testimony in some respects, such rules should not be interpreted to mean that anybody can testify about anything. The trial judge still has a duty to see that the expert is qualified to testify and is in fact testifying about subject matter within the realm of such expertise.

The general introductory note to Article VII Opinions and Expert Testimony, Arizona Rules of Evidence, states: "Generally, it is not intended that evidence which would have been inadmissible under preexisting law should now become admissible."

■ The trial judge has a wide discretion in ruling upon evidentiary matters. Udall, Arizona Law of Evidence, § 11 at p.

18. Under the facts of this case, we cannot say the court erred in striking that portion of Roller's testimony relating to his opinion as to why the plaintiff applied her brakes and then made a sharp left turn. His attempt to read the mind of the plaintiff, who remembers nothing of the accident, as to her reasons for braking and turning left was not proper opinion evidence in his line of expertise. He was not a "human factors" expert and from the facts we cannot say the trial court abused its discretion in striking such testimony.

Viewing the evidence absent such stricken testimony, we must now determine the difficult, close question of whether the court properly took the case from the jury in granting defendant's motion for a directed verdict.

■ It is clear in this state that a governmental body can be held liable for a failure to post adequate warnings at the situs of a known traffic hazard on a public roadway. *Brand v. J. H. Rose Trucking Co.*, 102 Ariz. 201, 427 P.2d 519 (1967); *City of Glendale v. Bradshaw*, 16 Ariz.App. 348, 493 P.2d 515 (1972); *Rodgers v. Ray*, 10 Ariz.App. 119, 457 P.2d 281 (1969); *State v. Watson, supra.* In analyzing these cases, there appears to be a common theme which reasons that if proper warnings had been given, they would have been heeded and the accident would have been avoided.

The most analogous Arizona case to the case under consideration appears to be *Brand v. J. H. Rose Trucking Co., supra.* In that case, the Arizona Supreme Court set aside a directed verdict on the grounds that the issue of proximate cause should have been submitted to the jury. In *Brand*, a driver when coming upon a truck parked on the highway with improper warning devices swerved into the other lane and was killed by the plaintiff's oncoming truck. The plaintiff sued the owner and driver of the disabled truck, alleging the defendant's negligence in not putting out proper warning devices was the proximate cause of the accident. The court reasoned that when there is any evidence of negligent conduct which reasonable men might infer was one

of the proximate causes of an accident, the cause must be submitted to the jury for decision. The court quoted with approval a statement of the Washington Supreme Court in a case involving a defendant's failure to place warning flags, as required by law, near a disabled vehicle where a head-on collision later developed. The Washington court stated: "The jury could have concluded that, had warning flags been properly placed the actions of any of the drivers involved would have been altered sufficiently to have prevented the accident." *Id.* 102 Ariz. at 206, 427 P.2d at 524 quoting *Mitchell v. Rogers*, 37 Wash.2d 630, 225 P.2d 1074 (1950).

■ It is our opinion that under the evidence presented in this case, a jury issue was presented as to whether there was a reasonable inference that the accident was caused by the negligence of the city in failing to place proper warning signs and tapered coning at the construction site lane change. It was therefore error to direct a verdict at the close of the plaintiffs' case.

Reversed and remanded.

CONTRERAS, P. J., and YALE McFATE, J. (Retired), concur.