730 P.2d 862

Roger JOHNSON, individually and as Conservator of the Estate of James Michael Johnson and Kathy Ann Johnson, minors, and Harlyn Tank, individually and as Special Administrator of the Estate of Victoria Lynn Presley, Plaintiffs-Appellants,

v.

MARICOPA COUNTY, a political subdivision of the State of Arizona; John E. Anderson and Jane Doe Anderson, husband and wife; Harold David Presley, an individual; John Does I-X, Defendants-Appellees.

No. 1 CA-CIV 8346.

Court of Appeals of Arizona,
Division 1, Department A.

July 15, 1986.

Reconsideration Denied Sept. 17, 1986.

Review Denied Jan. 8, 1986.

Treon, Warnicke & Roush, P.A. by Dick Treon, Gloria Ybarra and JoJene E. Mills, Phoenix, for plaintiffs-appellants.

Thomas E. Collins, Maricopa Co. Atty. by Lyle R. Huffman, Deputy Co. Atty., Phoenix and Jones, Skelton & Hochuli by William R. Jones, Phoenix, for defendant-appellee Maricopa County.

Jennings, Strouss & Salmon by Stephen A. Myers and Kevin Worthen, Phoenix, for defendants-appellees Anderson.

Sorenson, Moore & Julian by J. William Moore, Phoenix, for defendant-appellee Presley.

## OPINION

GREER, Judge.

This is a negligence action against multiple defendants arising out of a March 6, 1982 automobile accident at the intersection of 107th Avenue and Van Buren in Avondale. Defendants-appellees John E. and Charlotte Anderson, the owners of property abutting the intersection, moved for summary judgment. The trial court granted their motion, and later entered judgment in their favor pursuant to Rule 54(b), Arizona Rules of Civil Procedure. Appellants timely appealed. The appeal presents two

questions: (1) Whether appellees had a statutory duty under City of Avondale and Maricopa County ordinances not to erect or maintain a fence on their property so as to obstruct motorists' view of traffic on adjacent streets, and (2) whether appellee's fence could have been a proximate cause of the accident. We have jurisdiction pursuant to A.R.S. § 12–2101(B).

FACTS

The material facts are as follows. Northbound and southbound traffic at the intersection of 107th Avenue and Van Buren was controlled by stop signs on 107th Avenue. Appellees owned the land adjoining the northwest corner of the intersection. Parallel to Van Buren along appellees' south boundary line was a block and ironwork fence approximately five feet high and one foot wide. The fence was west of the stop sign controlling southbound traffic on 107th Avenue at Van Buren. Most of the Andersons' property was subject to Maricopa County zoning regulations. A strip of land at the intersection, including the land on which the fence itself stood, was within the Avondale city limits. Appellees conceded for the purpose of their motion for summary judgment that this fence violated City of Avondale and Maricopa County ordinances in that it was set too close to the road and obstructed motorists' view of the traffic approaching the intersection.

Immediately before the accident Arnold Leroy Mottin was driving east on Van Buren. At the same time, defendant Harold David Presley was driving south on 107th Avenue, carrying Victoria and Christy Presley and James and Kathy Johnson as passengers. The two cars collided, killing Mottin, Victoria Presley and Christy Presley, and seriously injuring James and Kathy Johnson.

Two versions of the way the accident occurred were offered in the trial court. Presley testified he approached the stop sign on 107th Avenue at Van Buren and stopped, then pulled out to a point where he felt he had adequate visibility in both the east and west directions on Van Buren. He testified he then proceeded, never having observed Mottin's vehicle. Accident reconstructionist Lamont Skousen averred that in his opinion at the time of the accident Presley was traveling approximately 19 miles per hour, a speed he could have reached if he had stopped at the stop sign. Accident reconstructionist John Schattenberg testified, however, that at the time of collision Presley was traveling between 35 and 40 miles per hour and could not have stopped at the stop sign because he could not have accelerated to 35 miles per hour had he done so.

DUTY

In their motion for summary judgment appellees argued there was no evidence their fence was a proximate cause of the collision, and that in any event they owed no legal duty to motorists to refrain from obstructing their view of the intersection in question. The proximate cause issue will be discussed separately below.

In its minute entry of January 17, 1985, the trial court ruled in favor of appellees, basing its decision solely on the issue of duty. It held that a possessor of land abutting a public highway had no common law duty to use or refrain from using his land so as to protect persons who drive on the highway. The trial court also rejected appellants' claim that the applicable Avondale and Maricopa County ordinances, which appellees' fence admittedly violated, could independently impose such a duty. The trial court stated:

> [Plaintiffs' claim] is precluded by *Jackson v. City of Scottsdale, supra* [127 Ariz. 53, 617 P.2d 1169 (App.1980)], which excepts municipalities and adjacent land owners from any legal duty for violations of obstruction ordinances at signed or signaled controlled intersections.

In support of their claim for reversal, appellants rely on the settled proposition that violation of a safety statute or ordinance constitutes negligence per se. *Rogers v. Mountain States Tel. and Tel. Co.*, 100 Ariz. 154, 412 P.2d 272 (1966). They argue that appellees' admitted violation of

the applicable ordinances constituted negligence per se, citing *Hall v. Mertz,* 14 Ariz. App. 24, 480 P.2d 361 (1971) and *Slavin v. City of Tucson,* 17 Ariz.App. 16, 495 P.2d 141 (1972). We agree that the trial court erred in holding that appellees were exempt from any legal duty to motorists at the intersection of 107th Avenue and Van Buren.

◼ In *Hall v. Mertz, supra,* a Tucson ordinance prohibited plantings on corner lots that would interfere with traffic visibility. The defendant owned property that abutted an intersection in Tucson on which grew an oleander hedge that obstructed motorists' view of the intersection. While riding her bicycle through the intersection, plaintiff was struck by a car whose driver did not see her and which she did not see because of defendant's hedge. The trial court dismissed plaintiff's action against defendant, but Division Two of this court reversed on appeal. The court held that where a valid statute, regulation or ordinance requires that a thing be done or not be done, failure to comply is negligence per se if it proximately causes injury to a person within the class of persons the statute or ordinance was designed to protect. The court held it was a legitimate inference from the language of the Tucson ordinance that it was designed to prevent accidents at intersections, including the kind of accident that happened in that case. *Accord Slavin v. City of Tucson, supra* (reversing summary judgment for landowner against estate of person killed in accident in uncontrolled intersection, where landowner maintained hedge that blocked traffic visibility in violation of a Tucson ordinance). Given appellees' concession for purposes of their motion for summary judgment that their wall violated the applicable ordinances because it was set too close to the road and obstructed motorists' view of the intersection, we conclude for purposes of this appeal that appellants were within the class of persons the ordinances were designed to protect. The trial court accordingly erred in granting summary judgment for appellees.

Our decision in *Jackson v. City of Scottsdale,* 127 Ariz. 53, 617 P.2d 1169 (App. 1980), on which the trial court relied in holding to the contrary, is inapposite. In that case the victims were driving north on Pima Road in Scottsdale, Arizona. As they proceeded through the intersection of Pima Road and Indian School Road with a green light in their favor, they were struck by a speeding eastbound car. They later sued the City of Phoenix, which had built a brick wall around a well it owned at the southwest corner of the intersection, and the City of Scottsdale, on the theory that maintaining the wall violated Scottsdale ordinances that prohibited the construction of any encroachment that would "impair adequate sight distance for safe vehicular traffic." 127 Ariz. 53, 54, 617 P.2d 1169, 1170. The trial court granted summary judgment for Phoenix and Scottsdale, and we affirmed on appeal. We stated:

> In order for appellants to prevail in their argument as to duty imposed by the ordinances, it must be shown that they were within the class of persons intended to be protected by the ordinances. *Restatement (Second) of Torts* §§ 286, 288 (1965). *See Hidalgo v. Cochise County,* 13 Ariz.App. 27, 474 P.2d 34 (1970). The protection claimed under the ordinance is an unobstructed view of the eastbound road leading to the intersection. The intersection in this case, however, is one in which traffic is controlled by a signal light. At such an intersection, the safe movement of traffic is governed by state statutes requiring motorists to abide by the signal. Consequently, as to signal-controlled intersections, the ordinances do not create a duty in favor of the motorists to maintain an unobstructed view. In this regard, it is necessary to read together the state statutes and the city ordinances. We presume that the city ordinances were enacted with the intention that they supplement state regulation of vehicular traffic. Since motorists approaching the intersection must proceed in reliance upon the traffic sig-

nal, the presence or absence of an unobstructed view is legally irrelevant.

127 Ariz. 53, 54–55, 617 P.2d 1169, 1170–71.

We cannot agree with appellees that the rationale of *Jackson* applies to intersections controlled by stop signs as well as those controlled by traffic signals. As we noted in *Jackson,* motorists who approach an intersection controlled by a traffic signal are required by law to abide by the signal, and may accordingly proceed in reliance on the signal alone. *See* A.R.S. §§ 28–644 and 28–645(A)(1)(a) (Supp.1985). A motorist who has stopped at a stop sign, however, must rely on his own observations of approaching traffic on the intersecting roadway before he may proceed. This principle is implicit in A.R.S. § 28–855(B), which provides:

> Every driver of a vehicle approaching a stop sign shall stop before entering the crosswalk on the near side of the intersection or, in the event there is no crosswalk, shall stop at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection except when directed to proceed by a police officer.

Accordingly, the presence or absence of an unobstructed view at an intersection posted with stop signs is not "legally irrelevant," and our decision in *Jackson* does not preclude the imposition of an ordinance-based duty to refrain from obstructing the view of approaching traffic at such an intersection.

Appellees nevertheless argue that the *Jackson* rationale was extended to intersections controlled by stop signs in *Coburn v. City of Tucson,* 143 Ariz. 76, 691 P.2d 1104 (App.1984), *approved as modified,* 143 Ariz. 50, 691 P.2d 1078 (1984). We disagree. *Coburn* concerned a fatal car-bicycle collision at a T-intersection where a stop sign was posted. The seven-year-old decedent in that case was riding his bicycle east on the wrong side of the street. Disregarding the stop sign, he proceeded through the intersection and was struck and killed by a motorist traveling south on the uncontrolled street. The property at the northwest corner of the intersection was owned by the defendant City of Tucson. There was a large bush on that property that could have obstructed the decedent's view of oncoming traffic but would not have obstructed the view of a rider or motorist who had stopped at the stop sign on the right side of the street. The trial court granted summary judgment for the City. Division Two of this court affirmed on appeal, holding that the City's duty to keep its streets reasonably safe for travel did not require it to maintain unobstructed vision at intersections.

Contrary to appellees' argument, we do not read Division Two's opinion in *Coburn* as extending the rationale of *Jackson* to intersections at which stop signs are posted. Under the peculiar facts in *Coburn* the court was concerned not with the defendant City's obligations as a private landowner whose property abutted an intersection, but rather its obligations as the governmental entity in charge of providing and maintaining public streets. *See* 143 Ariz. 76, 78–79, 691 P.2d 1104, 1106–07. *See also* 143 Ariz. 50, 53, 691 P.2d 1078, 1081, quoted *infra.* Moreover, the supreme court's opinion in *Coburn* significantly modified the opinion of the court of appeals, and rendered uncertain the continued vitality of the portion on which appellees rely. In *Coburn* the supreme court held the court of appeals had incorrectly characterized the applicable duty. The supreme court stated:

> We believe that an attempt to equate the concept of "duty" with ... specific details of conduct is unwise. Attempting to define or evaluate conduct in terms of duty tends to rigidify the concept of negligence—a concept which, by definition, must vary from case to case, depending upon the relationship of the parties and the facts of each case.

143 Ariz. 50, 52, 691 P.2d 1078, 1080. The court noted that the City's duty was to conform to the recognized standard of con-

duct, which was to keep its streets reasonably safe for travel. The court continued:

> The true issue in this case, therefore, is not whether the City had a duty toward Christopher. It had a duty to keep the streets reasonably safe for travel by Christopher and all others. The issue here is simply whether there is evidence sufficient to create a question of fact on the issue of whether the City's failure to remove the bush is conduct which fell below the standard of care and thus breached the duty. If the answer to that question is negative, then the trial court was correct in granting summary judgment and the court of appeals correct in affirming, even though both courts characterized the issue in terms of "duty." In analyzing the facts that determine this issue, we assume, without deciding, that because the City controls both the street and the adjacent land its duty as owner of the lot is coextensive with its duty as the possessor of the abutting streets.

143 Ariz. 50, 53, 691 P.2d 1078, 1081. The court went on to hold as a matter of law that under the facts of the case there was no evidence of a breach of duty. It noted that the bush on the City's land obviously did not obstruct the view of eastbound travelers in the proper lane who stopped at the stop sign. The court stated:

> The city is not bound to provide perfect intersections or streets, but only those which are "reasonably safe." What is "reasonably safe" takes into consideration certain minimal expectations that travelers follow the usual rules of the road.

143 Ariz. 50, 54, 691 P.2d 1078, 1082.

The supreme court's analysis in *Coburn* clearly did not rest on the proposition, advanced by appellees under the authority of *Jackson*, that an ordinance prohibiting plantings that obstruct the view at intersections imposes no duty on a landowner whose property abuts an intersection affected by a stop sign. Indeed, as we have already noted, the facts in *Coburn* raised no question at all concerning legal duties applicable to private landowners. Further, the supreme court's opinion left undisturbed the analytical approach exemplified by *Hall v. Mertz, supra.* The *Coburn* court stated:

> Of course, there may be cases similar to the one at bench where the question of "duty" does arise. For instance, an owner of land at the corner of an intersection may fail to remove a large tree or other obstruction to the vision of motorists on an uncontrolled intersection. The owner might even create an obstruction to vision by planting a tree or building a wall. It may be quite foreseeable that such an obstruction would create a hazard to drivers on the intersecting street. Ordinarily, creating such a foreseeable risk would breach the standard of care and thus would be negligent. However, liability does not attach unless there is also duty. Common law does not place the possessor of land abutting public highways under any obligation to use or refrain from using his land so as to protect members of the traveling public on abutting streets. *Rodgers v. Ray,* 10 Ariz. App. at 121, 457 P.2d at 283.

143 Ariz. 50, 52–53, 691 P.2d 1078, 1080–81. In its footnote number 1 to this passage, the court stated:

> *As the court of appeals indicated, of course, such a duty can be created by statute. See Hall v. Mertz, 14 Ariz.App. 24, 480 P.2d 361 (1971). In the case at bench, however, the court of appeals correctly concluded that the ordinance adopted by the City of Tucson did not impose such a duty on the city as an adjoining landowner.*[1] (Emphasis added.)

143 Ariz. 50, 53 n. 1, 691 P.2d 1078, 1081 n. 1. The supreme court's recognition of the

---

1. We disagree with appellees' contention that the last sentence of footnote one in *Coburn* supports their argument that a visual obstruction ordinance can impose no duty on a landowner whose property abuts an intersection affected by a stop sign. In our opinion the court's statement merely indicates it agreed with the court of appeals that the Tucson ordinance did not apply to the particular facts of the case. *See* 143 Ariz. 76, 78, 691 P.2d 1104, 1106.

*Hall v. Mertz* principle, together with its conceptual departure from the court of appeals' analysis of the duty issue in *Coburn,* lead us to conclude that we are free to apply *Hall v. Mertz* where, as here, the circumstances demand it. Accordingly, the trial court erred in holding that the applicable ordinances could impose no duty on appellees to refrain from obstructing the view of motorists at the intersection of 107th Avenue and Van Buren. If it is established in further proceedings in the trial court that appellees' wall violated the applicable ordinances, our holding would require the conclusion that appellees were guilty of negligence per se.

## PROXIMATE CAUSE

 In their motion for summary judgment in the trial court and on appeal, appellees contend that under any version of the facts, their negligence, if any, could not have proximately caused the accident. We disagree.

The record establishes the following facts. Presley was driving south on 107th Avenue at the same time Mottin was traveling east on Van Buren. Lamont Skousen by affidavit opined that the speed of the Presley vehicle immediately prior to impact is consistent with him having stopped at or near the stop sign on 107th Avenue. Presley testified he approached the stop sign on 107th Avenue, stopped and pulled up to a point where he felt he had adequate visibility both to the east and west on Van Buren. Presley further testified he looked both ways before proceeding into the intersection. The record indicates the fence was approximately five feet high and one foot wide. Frank R. Papscun, assistant traffic engineer for the Maricopa County Highway Department, testified that the eye level of a driver in an average vehicle is approximately three feet, six inches from the pavement. Traffic engineer Wayne T. Wagoneer, by affidavit, opined that if a motorist stopped at or near the stop sign, he could be misled into believing he could see a sufficient distance to the west to appreciate that eastbound traffic would not present a danger to him in crossing the intersection, when in fact there might not be sufficient visibility to make such a determination.

In our opinion, a fact issue exists as to whether the fence proximately caused the accident. The evidence is unclear as to where on 107th Avenue Presley stopped his vehicle and looked west down Van Buren before he proceeded into the intersection. The evidence could reasonably be interpreted to show Presley stopped and looked both ways at a point where his vision to the west was obstructed by the fence and from where he apparently believed he could proceed with safety. We cannot say under this version of the facts the fence was not a proximate cause of the accident as a matter of law.

Reversed and remanded for proceedings consistent with this opinion.

MEYERSON and KLEINSCHMIDT, JJ., concur.